

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-2009

# St. Paul Fire and Ma v. Brother Intl Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3886

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"St. Paul Fire and Ma v. Brother Intl Corp" (2009). *2009 Decisions.* Paper 1598.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1598

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3886
_____

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

v.

BROTHER INTERNATIONAL CORPORATION
d/b/a Brother Mall

Brother International Corporation,
Appellant
_____

On Appeal From the United States District Court
for the District of New Jersey
(Civil No. 06-cv-02759)
District Judge:  Honorable Freda Wolfson

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2008

Before: BARRY and CHAGARES, <u>Circuit</u> <u>Judges</u>, and RESTANI,[*] <u>Judge</u>.

(Filed: April 2, 2009)

_____

OPINION OF THE COURT

_____

---

[*] The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

CHAGARES, Circuit Judge.

Brother International Corporation ("Brother") appeals from the District Court's grant of summary judgment in favor of St. Paul Fire and Marine Insurance Company ("St. Paul") on St. Paul's complaint against Brother for declaratory judgment concerning its rights and obligations under an insurance policy between the two corporations, as well as on Brother's counterclaim for coverage. Brother seeks coverage for damages it sustained in a class-action lawsuit filed against it for sending unsolicited fax advertisements, a practice commonly known as "blast-faxing." We conclude that Brother is not entitled to coverage under St. Paul's policy, and we will therefore affirm the District Court's judgment.

I.

Because we write solely for the benefit of the parties, we will only summarize the essential facts.

On June 3, 2003, Stonecrafters, Inc. ("Stonecrafters") brought a nationwide class-action lawsuit against Brother, alleging that Brother's unsolicited fax advertisements violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and various state laws. The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other devise to send, to a telephone facsimile machine, an unsolicited advertisement." § 227(b)(1)(C). The *Stonecrafters* class challenged Brother's "policy and practice of sending unsolicited faxes to fax machines throughout the United States even when it

2

knows or should know that it did not have the recipient's permission to receive advertising from [Brother] and had no procedures in place to retain recipient's permission required by state and federal law." Joint Appendix (J.A.) 67. In a certification submitted to the District Court in connection with the parties' summary judgment motions, Brother's in-house counsel stated that Brother "did not intend to cause any injury or damage to the recipients of the facsimiles." J.A. 833 ("Brother sent the facsimile advertisements to provide savings to potential customers and believed that the facsimile advertisements would result in additional sales – not injury or damages to the recipients.").

Brother tendered the *Stonecrafters* complaint to St. Paul for defense and indemnity under its insurance policies. St. Paul had previously sold two insurance policies to Brother (hereinafter "the Policy")[1], two provisions of which are relevant to this action: the advertising injury provision and the property damage provision. The advertising injury provision obligates St. Paul to pay damages for injury (other than bodily injury or personal injury) that is caused by certain enumerated offenses. J.A. 528-29. The advertising injury offense is defined as "making known to any person or organization covered material that violates a person's right to privacy." Id.

The property damage provision obligates St. Paul to indemnify amounts that

---

[1] Because the two policies are identical in all relevant respects, we do not distinguish between them in the below discussion.

3

Brother is legally required to pay for physical damage to others' tangible property and for loss of use of that property, where the damage is caused by *an accident*. J.A. 527-28 (limiting liability to property damage that is "caused by an event," and defining an "event" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions"). The property damage coverage is also subject to an exclusion for damage that is "expected or intended" by the insured. J.A. 544.

On July 15, 2003, St. Paul rejected Brother's request to defend or indemnify it in the *Stonecrafters* lawsuit, denying any obligation to do so under the Policy. J.A. 849-53. After some discussion, however, St. Paul agreed, subject to "a complete reservation of rights," to defend Brother in the Stonecrafters action and "to reimburse Brother . . . for the reasonable fees and expenses that it has incurred in defending the *Stonecrafters, Inc.* class action lawsuit from the date on which the suit was tendered to St. Paul for a defense." J.A. 89.

In mid-2004, Brother and Stonecrafters began settlement discussions, which resulted in settlement of the underlying action in April 2005. J.A. 838. Thereafter, St. Paul filed a complaint for declaratory relief against Brother, seeking a determination of the parties' rights and obligations with respect to the *Stonecrafters* lawsuit under the Policy, and Brother filed a counterclaim for coverage.[2] The parties both moved for

---

[2] St. Paul filed this case on September 22, 2005 in the United States District Court for the Northern District of Illinois, Eastern Division. Pursuant to Brother's Motion to Transfer Venue, the case was transferred to the United States District Court for the

summary judgment and the District Court granted St. Paul's motion and denied Brother's cross-motion.[3]

The District Court held that St. Paul is not obligated to defend or indemnify Brother under either the advertising injury provision or the property damage provision of the Policy. The Court noted that TCPA claims involve invasions of the privacy right of *seclusion*, but the advertising injury provision in the Policy is limited to violations of the privacy right of *secrecy*. Thus, the District Court determined that the *Stonecrafters* lawsuit did not trigger the Policy's advertising injury provision.

The District Court also held that the *Stonecrafters* lawsuit did not trigger the Policy's property damage provision because the alleged injury was not "accidental." Specifically, the Court determined that the consumption of a fax recipient's toner and paper is the intended consequence of the insured's intentional act in sending the fax, and is therefore not "accidental" within the meaning of the Policy. The District Court also held that the Policy's exclusion provision precluded coverage because the property damage was "expected or intended" from the standpoint of the insured.

Brother filed a timely appeal from the District Court's judgment.

## II.

This is a diversity action governed by New Jersey law. The District Court had

District of New Jersey.

[3] St. Paul also filed two Motions to Strike, which the District Court granted in part and denied in part. St. Paul does not appeal from this disposition.

jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different States, and the amount in controversy exceeds $75,000. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal of a final decision of a District Court.

When reviewing an order granting summary judgment, "[w]e exercise plenary review . . . and we apply the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278 (citation omitted). "There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

Where the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving

6

party to point to sufficient cognizable evidence to create material issues of fact "such that a reasonable jury can find in its favor." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)); see Celotex, 477 U.S. at 332.

III.

Brother asserts that the District Court erred in holding that St. Paul had no duty to defend or indemnify Brother under the Policy. Specifically, Brother contends that the District Court wrongly concluded, as a matter of law, (1) that St. Paul's advertising injury provision only pertains to disclosure of otherwise secret information to third parties, not violations of the right of the recipients to be free of unwanted intrusions; and (2) that St. Paul's property damage provision does not apply to Brother's claims because the damage was not "accidental" within the meaning of the Policy. Brother also argues that the interpretation of the advertising injury provision involves unsettled questions of New Jersey state law, and should therefore be certified to the New Jersey Supreme Court.

We conclude that the District Court interpreted the relevant policy language correctly, and the advertising injury question is not appropriate for certification. We will therefore affirm the District Court's judgment.

A.

Brother claims that its conduct, as alleged in the *Stonecrafters* complaint, falls within the Policy's definition of "advertising injury offense," defined as "making known to any person or organization covered material that violates a person's right to privacy."

7

Stonecrafters' TCPA claim is essentially an invasion of privacy claim. Brother emphasizes that the "right to privacy" encompasses two rights: the privacy right of secrecy and the privacy right of seclusion. Under New Jersey law, courts must interpret undefined policy terms according to their "plain and ordinary meaning," Progressive Cas. Ins. Co. v. Hurley, 765 A.2d 195, 201 (N.J. 2001), and where "the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied," Mazilli v. Accident & Cas. Ins. Co., 170 A.2d 800, 803 (N.J. 1961). Accordingly, Brother argues that the District Court erred in construing the Policy to encompass only the privacy right of secrecy, not the privacy right of seclusion.

We disagree. Importantly, "although the term privacy can imply multiple meanings, that fact alone cannot suffice to create ambiguity." See, e.g., Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 501 (E.D. Pa. 2006), aff'd, 503 F.3d 339 (3d Cir. 2007) (judgment order). A policy's "failure to define a term should not send the Court scurrying to a dictionary hunting for ambiguity" if that term's meaning is unambiguous when "read in context." Id. at 501-02. "The real question," therefore, "is whether, when read in *context*, a reasonable purchaser of insurance would believe that the sort of privacy interests protected by the policies overlap with the sort of privacy with which the TCPA is concerned." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 640 (4th Cir. 2005) (emphasis in original).

8

As the District Court acknowledged, the New Jersey Supreme Court has never ruled on the advertising injury coverage issue. However, every court to consider the policy language before us has concluded that the advertising injury provision does not encompass TCPA blast-faxing claims. See, e.g., Melrose Hotel Co., 432 F. Supp. 2d at 504 (finding that St. Paul has no duty to defend Melrose against blast-faxing claims because "the clear and unambiguous provision 'making known to any person or organization covered material that violates a person's right of privacy' requires that the content contained in the covered material must violate a person's right of privacy and must be made known to a third party"); Res. Bankshares Corp., 407 F.3d at 641 (holding that the language "making known to any person or organization written or spoken material that violates a person's right to privacy" deals with violations of the privacy right of secrecy, while blast-faxing claims deal with violations of the privacy right of seclusion because the phrase "making known" implicates the "*content* of the advertisements" while fax-blasting claims deal with the "manner of the advertisement"); ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 53 Cal. Rptr. 3d 786, 794-95 (Cal. App. 2007) (same).

We agree with the reasoning of these courts, and conclude that the Policy's advertising injury provision does not apply to TCPA blast-faxing claims. As the Melrose court noted, "the phrase 'making known' suggests a focus on secrecy not present in [] policies which define advertising injury offense to include 'oral or written publication of material that violates a person's right to privacy.'" Melrose, 432 F. Supp. 2d at 503

9

(citation omitted). This is because the "[m]aking known to any person or organization" language "implies a disclosure to a third party," which "stands in contrast with the term 'publication,' which can include the simple act of issuing or proclaiming." Id.

Brother counters, emphasizing that two courts applied New Jersey law to hold that the right of privacy encompasses both seclusion and secrecy interests. See Myron Corp. v. Atl. Mut. Ins. Corp., BER-L-5539-06, slip op. (N.J. Super. Ct. Law Div. Jan. 22, 2007) (unpublished); Terra Nova Ins. Co. v. Fray-Witzer, 869 N.E.2d 565 (Mass. 2007). As St. Paul correctly notes, however, these cases are not only not binding upon this Court, but are also distinguishable because the advertising injury provisions in Myron and Terra Nova are worded differently than the advertising injury provision in the instant case. Compare Myron Corp., BER-L-5539-06, at 5 (defining advertising injury, in part, as "[o]ral or written publication, in any manner, of material that violates a person's right of privacy"), and Terra Nova Ins. Co., 869 N.E.2d at 569 (defining advertising injury, in part, as "[o]ral or written publication of material that violates a person's right of privacy"), with J.A. 528-29 (defining advertising injury offense as "making known to any person or organization covered material that violates a person's right to privacy"). Thus, Myron and Terra Nova do not undermine our analysis in any way.

For the foregoing reasons, we hold that the Policy's advertising injury provision does not encompass TCPA blast-faxing claims. We also deny Brother's motion for certification to the New Jersey Supreme Court. This case requires the application of basic

10

New Jersey contract principles to construe an insurance policy, the language of which has already been interpreted in a consistent manner by several courts. We will therefore affirm the District Court's judgment that St. Paul owes Brother no duty to defend Brother under the Policy's advertising injury provision.

B.

Brother also claims that the District Court erred in holding that St. Paul had no duty to defend Brother under the Policy's property damage provision. The Policy's property damage provision limits St. Paul's obligations to damage "caused by an event," and "event" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 527-28. The Policy also contains a specific exclusion for damage that is "expected or intended" by the insured. J.A. 544. Thus, the key issue here is whether the property damage was caused by "an accident," or whether it was "expected or intended." Brother asserts that the District Court erred in concluding, as a matter of law, that where a sender transmits an unsolicited fax advertisement, that sender subjectively expects or intends to cause property damage

The New Jersey Supreme Court generally applies a subjective test in determining an actor's intent to cause injury. Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1265 (N.J. 1992) ("Absent exceptional circumstances that objectively establish the insured's intent to injure, we will look to the insured's subjective intent to determine intent to injure."). We must therefore determine "whether the alleged wrongdoer

11

intended or expected to cause an injury." Id. at 1264. Brother argues that this question should have been presented to the jury because it raises genuine issues of material fact.

We disagree. Brother's argument is premised on its contention that the District Court erred by focusing on the intentional nature of the act -- the sending of unsolicited faxes -- rather than on whether Brother intended the resulting injury. Brother emphasizes that its in-house counsel certified that Brother "did not intend to cause any injury or damage to the recipients of the facsimiles." J.A. 833. Brother's unmodified and undefined use of the word "injury," however, unnecessarily complicates the relevant inquiry: whether Brother expected or intended the property damage sustained by the *Stonecrafters* class members. Because the property damage here is the depletion of paper and toner, and because Brother knew that this damage would occur as a result of its unsolicited advertisements, we hold that Brother expected or intended to cause the injury.

This conclusion is consistent with prior case law. See Melrose, 432 F. Supp. 2d at 510 (holding that where the insured knew that "its actions would cause the very harm that the TCPA aims to prevent," those actions were "expected or intended" and "no duty to defend ar[ose] under the Policy's property damage provisions"); Res. Bankshares Corp., 407 F.3d at 638-39 (holding that property damage was not caused by an accident where the insured "does not deny that it intentionally sent advertisements by fax" and it is "obvious" that the "'natural or probable consequence' of sending a fax" is the "depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone

12

line"). In <u>Melrose</u>, the court held that St. Paul owed no duty to defend under the property damage provision because "Melrose clearly intended to fax its advertisements to Class members" who had not given prior consent. <u>Melrose</u>, 432 F. Supp. 2d at 510. The court also noted that "Melrose's knowledge about the TCPA and its lack of intent to violate the TCPA are irrelevant to whether it intended to cause harm that befell Class members." <u>Id.</u>

We find <u>Melrose</u> particularly instructive because that case dealt with policy language identical to the language before us, and the insured put forth many of the same arguments that Brother now asserts. Although <u>Melrose</u> interpreted Pennsylvania law and not New Jersey law, Pennsylvania courts also have a subjective standard to determine intent to cause injury. Applying New Jersey's subjective intent standard to the present case, we conclude that Brother intended or expected to cause an injury when it knowingly sent faxes to recipients without their permission. Because, as Brother concedes, the relevant property damage here is the consumption of paper and toner, Brother must have expected or intended that damage to occur when it engaged in blast-faxing. Thus, St. Paul has no duty to defend or indemnify Brother under the Policy's property damage provision.

IV.

For these reasons, we will affirm the District Court's judgment in all respects.

13