# United States Court of Appeals
## For the First Circuit

No. 10-1119

CYNOSURE, INC.

Plaintiff, Appellee,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
AND ST. PAUL GUARDIAN INSURANCE COMPANY,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Charles E. Spevacek, with whom William M. Hart, Damon L. Highly, Meagher & Geer, P.L.L.P., Michael F. Aylward, and Morrison Mahoney, LLP, were on brief, for the appellants.
James T. Hargrove, with whom Laura E. D'Amato and Goulston & Storrs, P.C., were on brief, for the appellee.

May 12, 2011

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.**  This is a declaratory judgment action to determine coverage under a commercial policy insuring against liability for injury caused by advertising.  The plaintiff Cynosure, Inc., is the defendant in an underlying civil action charging it with responsibility for sending commercial fax messages "without consent from the recipients" in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(C).  Cynosure's insurers and the defendants here are St. Paul Fire and Marine Insurance Company and St. Paul Guardian Insurance Company, which we will speak of singularly as "St. Paul."  It denied that the relevant policies' coverage for "making known to any person or organization covered material that violates a person's right of privacy" extends to liability under the Act.  It explained that the policy language applied "where an insured makes known to others covered material that violates some other person's right of privacy," but not in the circumstances of the underlying action alleging that the recipient of a fax had thereby suffered injury to privacy of his own.

This ensuing request for declaratory judgment joins a line of cases addressing whether policies insuring against liability for violating privacy by advertising activity mean privacy understood as repose undisturbed by commercial intrusion (and thus liability for violating the Act), or privacy as freedom from disclosure to a third-party recipient of information that the subject of the

disclosure claims an interest in not having divulged. Compare Summit Loans, Inc. v. Pecola, 265 Md. 43, 288 A.2d 114 (1972) (hundreds of harassing phone calls violate the recipient's right to privacy), with Alberts v. Devine, 395 Mass. 59, 479 N.E.2d 113 (1985) (physician's disclosure of medical information gained through the professional relationship violates the patient's right to privacy). We hold that on a fair reading of these policies, they refer to disclosure, not intrusion, so that liability for violating the Act is not covered.[1]

There is no question that Massachusetts law governs in this diversity action, and the district court rested its decision in favor of coverage on the opinion of the Supreme Judicial Court of Massachusetts in Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 869 N.E.2d 565 (2007).[2] The policy construed in Terra Nova covered advertising liability for "publication of material that violates a person's right of privacy." Id. at 569. The Court applied the common rule that ordinary, plain meaning governs the analysis of insurance contract terms, along with the corollary that ambiguity

---

[1]Summary judgment orders are reviewed de novo. Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000).

[2]The substantive law applied in Terra Nova was actually that of New Jersey, which the parties stipulated was identical to the law of the Massachusetts forum. Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 869 N.E.2d 565, 570 (2007). While the Court did not expressly approve that stipulation, the interpretive principles applied leave no doubt that the analysis does represent Massachusetts law.

-3-

in the language as it would be understood by an ordinary insured is construed in favor of coverage.  Id. at 571-72.  Because it found "the term 'right of privacy' to be ambiguous [as to the alternatives of intrusion and disclosure] in the insurers' policies," id. at 573, it held that liability for violating the Act was covered.

It is not that the district court thought that the particular result reached in applying the Massachusetts interpretive rules in Terra Nova necessarily governed the result in a case like this. Finding ambiguity in "publication of material that violates a person's right of privacy" does not imply the same conclusion about "making known to any person or organization covered material that violates a person's right of privacy," and the Massachusetts Court was careful to say that it found "right of privacy" ambiguous in the policies then before it, not categorically.  But neither did the district court think that state law left the scope of the making-known term in limbo, for it saw a clue in Terra Nova's footnote 12: "Several courts have interpreted identical or similar policy language to mean that unsolicited facsimile advertisements constitute advertising injury."  Id. at 574 n.12 (citations to eight cases omitted, as are citations to four further cases, placed in a separate paragraph, that the Court noted as reaching "the opposite conclusion.")  Although the footnote did not explain the scope of "similar policy language," the district court understood

-4-

the phrase to extend to a "making known" provision like the one here.

Counsel for St. Paul, however, calls our attention to several other details of Terra Nova that point away from reading the footnote as deciding this case. Seven out of the eight cases in the string citation following the reference to "identical or similar policy language" dealt with a "publication," not a "making known," policy term. The remaining case involved a policy covering "invasions of rights of privacy" with no further definition of the term. See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 879 n.2, 882-83 (8th Cir. 2005). And although three "making known" cases were included in the subsequent citation of cases that "reached the opposite conclusion" from Terra Nova, the placement of those cases in a separate footnote paragraph at least raises a question whether the Massachusetts Court understood that "making known" was "similar" enough to "publication" to call for the same result. In fact, if we go back prior to footnote 12 of the opinion, the Massachusetts Court probably answered that question when it distinguished Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631 (4th Cir. 2005), as inapplicable because the policy at issue there "was different from" the "publication" policies at issue in Terra Nova "inasmuch as it defined an 'advertising injury' as '[m]aking known to any person or organization written or spoken material that

-5-

violates a person's right of privacy.'" Terra Nova, 869 N.E.2d at 415 n.10. We therefore think that the Terra Nova Court did not mean that the "making known" policies here would be treated as similar to "publication" policies, with the consequence that Massachusetts law is a clean slate on our issue, and we are consigned to making our own best guess about the state-law issue based on the familiar principles of insurance contract interpretation that the Commonwealth follows.

The first of those principles is that we look to the particulars of the very policy in issue, Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 871 N.E.2d 418, 425 (2007) ("An insurance contract is to be interpreted 'according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.'") (quoting Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 N.E.2d 234, 237 (1982)), which requires us to dispense for a moment with the shorthand classifications of "publication" and "making known," and examine the whole provision at issue. When we do, its remarkable differences from the clause at issue in Terra Nova include not only its description of advertising injury as occurring by making certain material known, but its identification of the recipient of such material as "a person or organization." By distinguishing "person" and "organization" and thus providing that a covered advertising injury occurs when an insured makes known to an

"organization" some material that violates a "person's" right of privacy, the policy provision describes a communication to a recipient (organization) that violates the right of a non-recipient third party (person). Since a mere intrusion into the recipient's repose does not violate any right of a non-recipient, in practical terms this means that the communication to the recipient violates the non-recipient's right of privacy only if it is a communication about the non-recipient. In order to give rise to tort liability for violating the third party's right of privacy, the material communicated must therefore reveal some fact the third party reasonably wishes to keep others from being told. See Terra Nova, 869 N.E.2d at 573 n.11 ("Black's Law Dictionary 1350 (8th ed. 2004) defines 'right of privacy' as '[t]he right to personal autonomy,' or 'the right of a person and the person's property to be free from unwarranted public scrutiny or exposure.'").

Taking this interpretation to define the limits of the coverage clauses is consistent with the straightforward meaning of related provisions in the St. Paul policies covering liability for other advertising offenses, those that involve libel or slander, making known material that disparages the products or work of others, and unauthorized use of the advertising materials of others; for each offense, the injury turns on the content of the material communicated to a third party. More significantly, treating this analysis as definitive is, of course, congruent with

-7-

the accepted definition of the verb phrase "make known," which other courts have read as commonly meaning "telling, sharing or otherwise divulging," Resource Bankshares, 407 F.3d at 641. See also Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co., 432 F. Supp. 2d 488, 503 (E.D. Penn. 2006), aff'd, 503 F.3d 339 (3d Cir. 2007) ("disclosure to a third party or divulging of a secret"). The relative specificity of "making known" thus distinguishes it from the more general verb "publishing," which can be used in either of two normal senses, to refer to revealing information or merely to the act itself of conveying material considered apart from its content. See Terra Nova, 869 N.E.2d at 572, 574. The upshot is that in contrast to a "publication" provision, there is no apparent ambiguity in the provision considered here, describing coverage of liability for making known to one person or organization something about a third person.

What logic and definition require, syntax confirms. On our reading, the content of the material communicated (revealing something about a third party) is necessary for a covered violation of a right of privacy. Under Cynosure's argument, on the contrary, making known alone (to the recipient) would violate privacy without regard to content. That is, the modifying phrase "that violates a person's right of privacy" would refer to "making known," not to "material." But to do that, the modifier would have to jump back over the words "to any person or organization covered material,"

-8-

and that would be not only a broad jump, but an unlikely one at all, since the phrase "that violates . . ." has an obvious antecedent in its contiguous neighbor, "covered material."  While not every commercial contract term may intend to respect this convention of looking to the most direct antecedent as the subject of a modifier, the more complex a sentence is, the more likely it is that the most direct antecedent is the one that commercial contracting parties understood.[3]

Aside from that, reading the modifier "that violates. . ." to refer to "making known" would involve usage so awkward and so unusual as to make it too unlikely to be reasonable.  On Cynosure's view, it would have to make sense to read the policy provision without the reference to covered material, that is, as covering liability for a "making known . . . that violates a person's right of privacy."  But that is not how we speak, and it would be barbarous to talk or write that way.  Cynosure, in other words, asks us to read the provision as if it were written some other way, and that is just what the Terra Nova Court has told us the law of Massachusetts will not tolerate.  869 N.E.2d at 574.

In sum, we believe that the Supreme Judicial Court of

---

[3]Contrast the provision here with Terra Nova's "publication of material that violates a person's right of privacy."  "[M]aterial" is again the closest probable antecedent, but "publication," another noun, is only two words back.  It is not so clear that "publication" would not be fairly read as modified, even with "material" in between.

Massachusetts would conclude that St. Paul's language in these "making known" policies is not ambiguous, and that the person who wrote the coverage disclaimer got it right in a nutshell, by explaining that the policies' advertising liability coverage applies only "where an insured makes known to others covered material that violates some other person's right of privacy." Such is not the basis for liability incurred by sending faxes in violation of § 227(b)(1)(C), as indeed we understand every case to have held when dealing with making-known policy language like the provisions here.[4] St. Paul is entitled to judgment.

**Reversed.**

---

[4]Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,407 F.3d 631 (4th Cir. 2005); Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.,432 F. Supp. 2d 488 (E.D. Penn. 2006), aff'd, 503 F.3d 339 (3d Cir. 2007); St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., No. C06-1056RSL, 2007 WL 564075 (W.D. Wash. Feb. 16, 2007), aff'd, 2008 WL 5077281 (9th Cir. Nov. 25, 2008); ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 53 Cal. Rptr. 3d 786 (Cal. Ct. App.2d Dist. 2007).