# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3068
_____

Owners Insurance Company; Auto-Owners
Insurance Company

*Plaintiffs - Appellants*

v.

European Auto Works, Inc., doing business
as Autopia; Percic Enterprises, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2012
Filed: September 17, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Owners Insurance Company and Auto-Owners Insurance Company brought this declaratory judgment action seeking a ruling that their insurance policies issued to European Auto Works, Inc., doing business as Autopia, do not cover class claims brought in state court by Percic Enterprises, Inc. The state court complaint alleged

that Autopia violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(C), by sending unsolicited fax advertisements.

In this federal action the insurers argue that such claims do not fall within the policy provisions for "advertising injury" or "property damage." After a settlement was reached in the state action, the federal district court[1] concluded that damages sustained by sending unsolicited fax advertisements in violation of the TCPA are covered under the advertising injury provision in the policies. The insurers appeal, arguing that TCPA claims are not covered by the policies. Applying standard Minnesota principles of insurance contract interpretation where unambiguous words are given their "plain, ordinary, and popular meaning," Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (citation omitted), and ambiguous language is construed in favor of the insured, Minn. Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179 (Minn. 1990), we affirm.

I.

Autopia, an auto repair company, hired a firm called Business to Business Solutions to fax 5,000 advertisements to prospective customers in 2005. According to Autopia, Business to Business Solutions had represented that its services complied with faxing guidelines and that it only sent faxes to persons who had consented to receive them. Percic Enterprises was one of the recipients of these fax advertisements and alleges that it never consented to receive them.

Percic brought a class action lawsuit against Autopia in Minnesota state court, claiming that Autopia had violated the TCPA and committed the common law tort of conversion by sending unsolicited fax advertisements to it and other class members.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

The TCPA prohibits the sending of unsolicited fax advertisements and provides a private right of action to recipients of such faxes. 47 U.S.C. § 227(b)(1)(C), (b)(3). Injured parties may sue for actual damages or for a statutory amount of $500 per violation. Id. § 227(b)(3)(B).

The complaint alleged that the unsolicited faxes had "unlawfully interrupted Plaintiff's and other class members' privacy interests in being left alone." Autopia maintained that it had relied on the representations of Business to Business Solutions and had not intended to harm anyone. Autopia tendered its defense to Owners and Auto-Owners (collectively the insurers) who undertook the defense under a reservation of rights.

Autopia had purchased a commercial general liability policy and garage liability coverage from Owners and a commercial umbrella policy from Auto-Owners. The commercial general liability and commercial umbrella policies contained identical language for purposes of this case, and they will simply be referred to here as "the policies." In relevant part the policies covered sums that "the insured becomes legally obligated to pay as damages because of . . . 'advertising injury.'" The policies defined "advertising injury" as "injury arising out of one or more" of four listed offenses. The policy section at issue in this case is "oral or written publication of material that violates a person's right of privacy."[2] The policies also cover sums that "the insured becomes legally obligated to pay as damages because of . . . 'property damage'" caused by an "occurrence" or an "incident."

While the state class action instituted by Percic against Autopia was pending, Autopia's insurers initiated this declaratory judgment action in federal district court.

---

[2]The other three types of offenses related to advertising are copyright infringement, misappropriation of advertising ideas, and "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

Autopia and Percic were named as defendants. The insurers sought a determination that the claims at issue in the state court proceeding were not covered under their policies. Percic filed a counterclaim seeking a declaration that the claims it had asserted were covered as "advertising injury" and/or "property damage."

Percic, Autopia, and the insurers settled the state court litigation in March 2011. The settlement agreement stated that Autopia had faxed 5,851 unsolicited advertisements, of which 3,903 had been received. The parties also agreed to the entry of judgment against Autopia in the amount of $1,951,500, which represented $500 for each unsolicited fax received by class members. See 47 U.S.C. § 227(b)(3)(B). The settlement agreement stated that it was enforceable only against the insurers if coverage were found in the federal action, not against Autopia individually. The state court certified the class and approved the settlement.

Both sides then moved for summary judgment in this declaratory judgment action. The district court granted summary judgment to Autopia and Percic and denied the insurers' motion. It concluded that the TCPA claim was a claim for advertising injury and was thus covered under the "plain and ordinary meaning" of the policies. Specifically, the court held that sending unsolicited fax advertisements in violation of the TCPA was an "oral or written publication of material that violates a person's right of privacy." Since it found coverage under the advertising injury provision of the policies, the district court did not reach the question of whether the property damage provision also provided coverage.

The insurers appeal, arguing that the district court erred in determining that TCPA violations were advertising injury. They also contend that TCPA violations are not covered under the property damage provision. They seek reversal of the adverse grant of summary judgment and entry of summary judgment in their favor.

We review the district court's grant of summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party." Skare v. Extendicare Health Servs. Inc., 515 F.3d 836, 840 (8th Cir. 2008). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Minnesota law governs the interpretation of the insurance policies at issue here. Since the Minnesota Supreme Court has never addressed the specific issue presented in this appeal, our task is to predict how that court would resolve it. See Callas Enters., Inc. v. Travelers Indem. Co. of Am., 193 F.3d 952, 955 (8th Cir. 1999).

## II.

The primary issue presented here is whether the advertising injury provision for "oral or written publication of material that violates a person's right of privacy" covers the sending of unsolicited fax advertisements in violation of the TCPA. The parties do not dispute that TCPA violations for sending unsolicited faxes may violate some form of privacy right, but they disagree as to whether the type of privacy violation on which Percic's TCPA claim is based is covered by the policies. Privacy law distinguishes between (1) secrecy based torts that punish disclosure of private information about someone other than the recipient, and (2) seclusion based torts that involve intruding on another's solitude. Am. States Ins. Co. v. Capital Assocs. of Jackson Cnty., 392 F.3d 939, 941 (7th Cir. 2004); Restatement (Second) of Torts § 652A (1977).

The insurers contend that the plain language of the policies' advertising injury provision covers only the secrecy interest, since that provision is concerned with the content of the material being published. The insurers further argue that the TCPA and the allegations in the complaint concern only the intrusion on solitude caused by unsolicited fax advertisements, not the content of those advertisements. The insurers contend in sum that the unambiguous language of the policies protects only secrecy

based privacy violations and not the seclusion based privacy interests protected by the TCPA.

Courts which have examined similar policy provisions disagree on whether the policies cover damages caused by the type of privacy violations raised in TCPA claims. The majority of circuits which have considered the question have held that the phrase is not limited to secrecy based privacy violations and that the phrase covers TCPA violations. See, e.g., Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1250 (10th Cir. 2006); Hooters of Augusta, Inc. v. Am. Global Ins. Co., 157 F. App'x 201, 206–07 (11th Cir. 2005) (unpublished); W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co., 96 F. App'x 960 (5th Cir. 2004) (unpublished), aff'g 269 F. Supp. 2d 836 (N.D. Tex. 2003)); see also Penzer v. Transp. Ins. Co., 29 So.3d 1000, 1006–07 (Fla. 2010). For example, the Tenth Circuit found a duty to defend in Park University Enterprises, because the "transmission of an allegedly unsolicited fax can constitute a publishing act, while receiving the same can result in an invasion of privacy" under Kansas law. 442 F.3d at 1251.

In contrast, the Seventh Circuit has accepted arguments similar to those offered by the insurers here. In American States Insurance Co., it held that a provision for "[o]ral or written publication of material that violates a person's right of privacy" covers only secrecy based privacy violations and therefore does not cover claims under the TCPA. See 392 F.3d at 940, 942–43. In that case the Seventh Circuit was predicting how Illinois law would determine the issue, deciding that there was no duty to defend a TCPA suit under the policy because the word "publication" narrowed the scope of the privacy rights referred to in the provision, leaving only secrecy based claims covered. Id. at 942–45. The Illinois Supreme Court subsequently decided Illinois law to the contrary. That court's authoritative interpretation of Illinois law ruled that such a provision does cover TCPA violations. Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 860 N.E.2d 307, 323 (Ill. 2006). The Illinois Supreme Court reasoned that the Seventh Circuit's technical reading of the word "publication" was "inconsistent with" Illinois principles for construing insurance contracts, which

-6-

"afford[] undefined policy terms their plain, ordinary, and popularly understood meanings." Id. But see Auto-Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 550–51 (7th Cir. 2009) (predicting that Iowa would follow its American States interpretation holding there was no duty to defend under an identical provision).

## III.

Here, we are called to apply Minnesota law to the specific language of the advertising injury provision under consideration. Minnesota law directs that "[g]eneral principles of contract interpretation apply to insurance policies." Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). In interpreting a contract the "primary goal" is to determine the parties' intent. Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 364 (Minn. 2009). Unambiguous words are given their "plain, ordinary, and popular meaning." Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (citation omitted). Ambiguous language is construed against the insurer according to the "reasonable expectations of the insured." Minn. Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179 (Minn. 1990). Minnesota courts construe ambiguities in favor of the insured "[b]ecause most insurance policies are presented as preprinted forms, which a potential insured must usually accept or reject as a whole." Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). An insurance policy provision is ambiguous if it is "reasonably subject to more than one interpretation." Minn. Mining & Mfg. Co., 457 N.W.2d at 179.

The advertising injury provision at issue covers damages the insured becomes legally obligated to pay because of "oral or written publication of material that violates a person's right of privacy." Since the policies do not define the key terms of "publication" and "right of privacy," we accord them their "plain and ordinary meaning." Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998).

We conclude that the ordinary meaning of the term "right of privacy" easily includes violations of the type of privacy interest protected by the TCPA. Our court has previously stated that violations of the TCPA are "'invasions of privacy' under [the] ordinary, lay meaning[] of the[] phrase[]." Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 881 (8th Cir. 2005).[3] Other courts have recognized that "an unexpected fax, like a jangling telephone or a knock on the door, can disrupt a householder's peace and quiet" and that the TCPA promotes this "interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipients' ink and paper." Am. States Ins. Co., 392 F.3d at 942. Percic's complaint alleged that Autopia violated the TCPA by sending unsolicited faxes which "unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone." We conclude that the policies' phrase "violat[ing] a . . . right of privacy" encompasses violations of privacy rights protected by the TCPA. See Park Univ. Enters., Inc., 442 F.3d at 1249–50 (10th Cir.); Hooters of Augusta, Inc., 157 F. App'x at 206–07 (11th Cir.).

We also reject the insurers' argument that the policies' reference to "violat[ing] a . . . right of privacy" required Percic to plead a specific Minnesota common law privacy tort in its complaint against Autopia. They contend that Minnesota courts "have rejected coverage where the specific cause of action identified in the policy is not pled." Here, however, the policies use the general language of "violat[ing] a . . . right of privacy" without defining that term or limiting its scope. Minnesota law directs that words in an insurance policy are to be accorded their ordinary meaning. See Garvis v. Emp'rs Mut. Cas. Co., 497 N.W.2d 254, 257 (Minn. 1993). Since TCPA violations are "'invasions of privacy' under [the] ordinary, lay meaning[] of the[]

---

[3]In Universal Underwriters we interpreted Missouri law and concluded that a complaint alleging a TCPA violation triggered a duty to defend under a policy provision covering "injury," which was defined to include "invasion of rights of privacy." We did not consider the policy's separate "advertising injury" provision. 401 F.3d at 883.

-8-

phrase[]," Universal Underwriters Ins. Co., 401 F.3d at 881, this argument by the insurers is without merit.

Moreover, the plain meaning of "publication" is broad enough to include the dissemination of fax advertisements. "Publication" has multiple definitions, including "communication (as of news or information) to the public" and "the act or process of issuing copies . . . for general distribution to the public." Webster's Third New International Dictionary (2002). While the word can have the narrower, tort based meaning urged by the insurers of publicizing "secret or personal information," see Auto-Owners Ins. Co., 580 F.3d at 550, its ordinary meaning is broader. We conclude that sending fax advertisements is a form of "publication" because such transmissions fall within the definition of communicating information generally. Other courts have agreed. See, e.g., Park Univ. Enters., Inc., 442 F.3d at 1250 (10th Cir.) (concluding that definition of "publication" can include "communicat[ing] information generally"); Hooters of Augusta, Inc., 157 F. App'x at 208 (11th Cir.).

The distinction between the term "publication" and the phrase "making known" (the latter being used in other commercial liability policies) has been examined by several circuit courts. This distinction confirms our view that "publication" can include disseminating fax advertisements. Several circuits have found no coverage under policies which used the language "making known to any person or organization covered material that violates a person's right of privacy," as opposed to the language here which refers to "publication of material that violates a person's right of privacy." See Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co., 645 F.3d 1, 2 (1st Cir. 2011) (Souter, J.); Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 641–42 (4th Cir. 2005) (nearly identical language); St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., 319 F. App'x 121, 125–26 (3d Cir. 2009) (unpublished) (emphases added). We agree with Justice Souter's explanation that "publication" is more general than "making known." Cynosure, Inc., 645 F.3d at 4. While the latter suggests disclosure of information to a third party, publication can mean either "revealing information or . . . the act itself of conveying material considered apart

-9-

from its content."  Id.; see also St. Paul Fire & Marine Ins. Co., 319 F. App'x at 125–26 (same).

The policies' reference to violating a "right of privacy" thus encompasses the intrusion on seclusion caused by a TCPA violation for sending unsolicited fax advertisements, and the term "publication" includes dissemination of faxes.  After examining the provision as a whole, we conclude that "oral or written publication of material that violates a person's right of privacy" covers the sending of unsolicited fax advertisements.  We reject the insurers' contention that the placement of the limiting phrase "that violates a person's right of privacy" compels an interpretation which excludes TCPA violations from coverage.  The insurers contend that the phrase must modify "material" and not "publication," citing the last antecedent rule.  See Larson v. State, 790 N.W.2d 700, 705 (Minn. 2010).  They argue that the provision only covers situations where the content of the advertisement (the material) violates a right of privacy.  They argue, in other words, that the policies unambiguously cover only damages resulting from invasions of a person's right of privacy by publicizing private information.

If an insurance policy provision is "reasonably subject to more than one interpretation," Minnesota law requires that it be construed in favor of coverage. Minn. Mining & Mfg. Co., 457 N.W.2d at 179.  Applying the last antecedent rule does not compel the insurers' narrow interpretation excluding coverage.  That rule directs that "a limiting phrase . . . ordinarily modifies only the noun or phrase that it immediately follows."  Larson, 790 N.W.2d at 705 (emphasis added).  Here the phrase "publication of material" precedes the limiting phrase "that violates a person's right of privacy."  While it is possible that the limiting phrase was intended to modify only the word "material," it is equally possible to read the provision so that the limiting phrase modifies the preceding phrase "publication of material."  See Cynosure, Inc., 645 F.3d at 5 n.3 ("It is not so clear that 'publication' would not be fairly read as modified, even with 'material' in between.").  The latter interpretation would result in coverage because under this reading the publication by fax of the unsolicited

advertisements (the material) violates the recipient's seclusion based right of privacy. At best, the insurers' argument would show that the phrase is "reasonably subject to more than one interpretation," one of which would cover TCPA violations. Under Minnesota law, the policies must be construed in such a situation in favor of the insured. See Minn. Mining & Mfg. Co., 457 N.W.2d at 180.

We also reject the insurers' contention that the provision's placement in the policy next to other types of advertising injuries which require an evaluation of the content of the advertisement compels a judgment in their favor. The advertising injury portion of the policies covers a wide range of injuries, including copyright infringement and libel, and it does not necessarily follow that the right of privacy provision must involve the content of the advertisements. That the other advertising injuries included in the policy are predicated on the content of the advertisement may reflect nothing more than the fact that most advertising injuries are related to the content of the advertisement. It is a considerable stretch to argue that this necessarily and unambiguously implies that an advertising injury which happens not to be related to the advertisement's content is meant to be excluded from coverage. Without any apparent conflict between the plain language of the policy and the surrounding policy terms, there is no reason to believe the Minnesota Supreme Court would deviate from its general rule of interpreting ambiguous provisions in favor of the insured. See Valley Forge Ins. Co., 860 N.E.2d at 318 (TCPA coverage under privacy provision "does not, in any way, prevent the policies' alternative definitions of 'advertising injury' from being given effect or thwart their respective purposes").

Had the insurers wanted to exclude TCPA violations from the advertising injury provision, they "could have specifically [so] defined the term." Soo Line R.R. Co. v. Brown's Crew Car of Wyo., 694 N.W.2d 109, 115 n.1 (Minn. Ct. App. 2005). Autopia "purchased these 'comprehensive general liability policies' expecting coverage against most legal liabilities." Minn. Mining & Mfg. Co., 457 N.W.2d at 181. If a "narrow, technical definition . . . was intended by the insurance companies, it was their duty to make that intention clear." Id. The record indicates that in a

-11-

subsequent version of the policy a specific exclusion was added for "advertising injury" arising "directly or indirectly out of any action or omission that violates or is alleged to violate . . . the [TCPA]." It would thus not have been difficult for the insurers to make such an intention clear by writing the policies specifically to exclude TCPA violations. The policies at issue here do not have such an exclusion, nor do they define the key terms in their advertising injury provision.

In sum, we conclude that under Minnesota law "oral or written publication of material that violates a person's right of privacy" covers the TCPA claim at issue here for the sending of unsolicited fax advertisements. Such conduct involves a "publication of material" (the sending of the unsolicited fax advertisement) that violates a "right of privacy" (the right to seclusion based privacy protected by the TCPA). Our reading of the policies is faithful to Minnesota principles of insurance contract interpretation, which require courts to give terms their "plain, ordinary, and popular meaning," and to resolve ambiguities according to the "reasonable expectations of the insured." Minn. Mining & Mfg. Co., 457 N.W.2d at 179. Our conclusion is also consistent with the majority of courts which have found coverage for TCPA claims under similar provisions. See, e.g., Park Univ. Enters., Inc., 442 F.3d at 1251 (10th Cir.); Hooters of Augusta, Inc., 157 F. App'x at 208 (11th Cir.); W. Rim Inv. Advisors, Inc., 96 F. App'x 960 (5th Cir.); Valley Forge Ins. Co., 860 N.E.2d at 323 (Ill.). Since we conclude that coverage exists under the policies' advertising injury provision, we need not reach the issue of whether the property damage provision would have also provided coverage.

IV.

Accordingly, the judgment of the district court is affirmed.

COLLOTON, Circuit Judge, dissenting.

The insurance policy language at issue in this case has been the subject of judicial decisions under the law of several jurisdictions, and it has divided the courts. In my view, the better reasoned decisions, and those most likely to be followed by the Supreme Court of Minnesota, are those holding that there is no coverage for claims alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C). I would therefore reverse the judgment of the district court and remand for further proceedings.

Owners Insurance Company and Auto-Owners Insurance Company issued insurance policies to European Auto Works, Inc., d/b/a Autopia. The policies state that the insurers will pay damages that the insured is obligated to pay because of "advertising injury." The definitions of "advertising injury" in the policies are essentially the same. In the commercial general liability policy issued by Owners Insurance, the term is defined as follows, with emphasis added:

> "Advertising injury" means injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
>
> b. *Oral or written publication of material that violates a person's right of privacy.*
>
> c. Misappropriation of advertising ideas or style of doing business; or

d.      Infringement of copyright, title or slogan.[4]

Autopia and Percic Enterprises, a recipient of Autopia's facsimiles, seek to establish that the insurance policies cover damages that Autopia must pay to Percic for sending unsolicited facsimiles in violation of the TCPA. They argue that the damages are due to "advertising injury," because they arise out of an "oral or written publication of material that violates a person's right of privacy." On that view, the facsimiles violated Percic's interest in avoiding intrusions on seclusion, which is one species of a right of privacy.

The italicized subsection (b), however, must be viewed in context. Minnesota law is firm on this point: "Although we begin with the plain and ordinary meaning of the terms, the terms of a contract must be read in the context of the entire contract." *Quade v. Secura Ins. Co.*, 814 N.W.2d 703, 705 (Minn. 2012) (internal quotation omitted). The Minnesota courts will not consider the meaning of subsection (b) in isolation, but in the light of surrounding provisions.

The context shows that the definition of advertising injury "focuses on the *content* of an advertisement rather than harm arising from mere *receipt* of an advertisement." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 551 (7th Cir. 2009). Subsections (a), (c), and (d) all depend on an examination of the content of the advertisement to determine whether the content caused harm. Subjection (a) even begins with precisely the same phrase as does subsection (b)—"Oral or written publication of material"—which in subsection (a) means that the offender has publicized material that damages the targeted person. Rather than assume that the parties gave the same phrase different meanings in adjacent subsections of the same policy, we should read subsection (b) likewise to refer to an

_____

[4]The relevant text of a commercial umbrella policy issued by Auto-Owners Insurance is identical, except that the opening clause qualifies "following offenses" with "committed in the course of advertising **your** goods, products or services."

act of publicizing material, the content of which causes injury. That has been the conclusion of courts applying the law of three different jurisdictions, all of which give words in a policy their ordinary meaning and construe ambiguities against an insurer. *See Websolv*, 580 F.3d at 551 ("The surrounding provisions . . . require the examination of the content of the offending advertisement. It is therefore reasonable to infer that subsection (b) also concerns harm emanating from the content of an advertisement.") (applying Iowa law); *State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 104 Cal. Rptr. 3d 573, 587 (Cal. Ct. App. 2010) ("The provision at issue falls in the middle of four definitions of 'advertising injury' . . . . Viewed in this context, [the definition] may most reasonably be interpreted as referring to advertising material whose *content* violates a person's right of privacy."); *Telecomm. Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331, 337 (Pa. Super. Ct. 2010) ("When the term is read within the context of the policies, it is clear . . . that the term 'privacy' is confined to secrecy interests. . . . [The] offenses refer to the content of the material covered by the policies."). The suggestion here is not that the Supreme Court of Minnesota would "deviate from its general rule of interpreting ambiguous provisions in favor of the insured," *ante*, at 11, but that the Minnesota court would *follow* its general rule of reading a clause in the context of the policy as a whole before determining whether it is ambiguous. *Quade*, 814 N.W.2d at 706.

A number of decisions from other jurisdictions that find coverage for damages arising from unsolicited facsimiles seem to construe the subsection in isolation without discussing the surrounding provisions. One exception, cited by the court, is *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307 (Ill. 2006). In rejecting the insurer's argument, the Supreme Court of Illinois reasoned that reading subsection (b) broadly to encompass unsolicited facsimiles would "not, in any way, prevent" the other subsections "from being given effect or thwart their respective purposes." *Id*. at 318. That observation is true, but irrelevant under Minnesota law. Of course, construing subsection (b) out of context would not leave subsections (a), (c), and (d) without effect. But the point of reading subsection (b) in context is that

the other subsections give meaning to subsection (b) and show that it is concerned with harm arising from the content of advertising material. Subsection (b) "must be construed within the context of the [provision] as a whole and cannot be artificially separated from the other language." *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 653 (Minn. 1986).

The transmission of an unsolicited facsimile does not publish material that violates a person's right to privacy in the sense relevant to these insurance policies. An unwanted advertisement does not publicize information about the recipient that the recipient wants to keep private. The policies thus do not provide coverage for the damages incurred by Autopia as a result of its violations of the TCPA.

For these reasons, I would reverse the judgment of the district court and remand for further proceedings.

_____