# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 04-1659

AMERICAN STATES INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

CAPITAL ASSOCIATES OF JACKSON COUNTY, INC., *et al.*,

*Defendants-Appellees.*

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-00975-DRH—**David R. Herndon**, *Judge.*

————————

ARGUED NOVEMBER 8, 2004—DECIDED DECEMBER 23, 2004

————————

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* According to a complaint filed in state court, Capital Associates of Jackson County sent an unsolicited advertisement to the fax machine of JC Hauling Company, thus violating 47 U.S.C. §227(b)(1)(C). JC Hauling launched a class action on behalf of all recipients of Capital Associates' junk faxes. Capital Associates tendered the defense to American States Insurance Co., which had issued a policy covering "advertising injury," among other harms. American States, which has undertaken the defense under a reservation of rights, filed this

federal suit seeking a declaratory judgment that the policy does not call for either defense or indemnity.

"Advertising injury" is defined to include "[o]ral or written publication of material that violates a person's right of privacy." Another portion of the policy excludes injury that is "expected or intended from the standpoint of the insured." American States contended that sending unsolicited advertising by fax does not cause "advertising injury" and that, if it does, the recipient's loss is "expected or intended from the standpoint of the insured." But the district judge held that an unsolicited fax invades the recipient's "privacy" and that American States therefore must defend its insured. The judge did not discuss the policy's exclusion of expected or intended consequences and left several items dangling. Some of the omissions are understandable. For example, the judge thought it premature to decide whether American States must indemnify Capital Associates (and, if so, in what amount), given the unresolved status of the underlying suit. Other omissions are harder to appreciate. For example, Capital Associates filed a counterclaim seeking punitive damages on the ground that American States has vexatiously and wilfully refused to defend or indemnify its insured. That absurd claim should have been dispatched promptly. American States has not refused to defend; it has provided a defense under a reservation of rights. It has not refused to indemnify; the time to pay has not arrived. It has not acted vexatiously; this suit represents an effort to clear up an interpretative disagreement. Presenting a dispute to a court for resolution is hardly a reason to award punitive damages! But instead of resolving all claims that were ready for decision, the district court dismissed them "without prejudice"—indeed, it dismissed the whole *suit* "without prejudice," even though its resolution of the duty-to-defend issue is conclusive.

By dismissing everything without prejudice, without distinguishing between claims that had been fully addressed

and those whose resolution had been postponed, the district judge created a jurisdictional problem for the parties and this court. Dismissals without prejudice are canonically non-final and hence not appealable under 28 U.S.C. §1291. See, e.g., *Brown v. Argosy Gaming Co.*, 360 F.3d 703 (7th Cir. 2004). The prospect facing American States, however, is that, if Capital Associates should win the state suit, there would be no further dispute about indemnity and no reason to renew the federal litigation. That would leave American States without a means to obtain appellate review of the duty-to-defend question, for by then it would be too late to appeal the federal judgment. A duty-to- defend issue will survive the state case whether or not Capital Associates prevails, for if American States is right it is entitled to reimbursement from its client for the expenses of putting on the defense. But if American States may appeal now in light of the risk that a dispute about who pays for the defense will evade appellate resolution later, there is a substantial chance that the dispute will return to this court if Capital Associates loses the state case and the parties dispute the amount of required indemnification, or Capital Associates reasserts its demand for punitive damages.

It would have been better had the district court stayed proceedings until the underlying suit reached a conclusion. The loser or losers in the federal litigation then could have appealed from a truly final disposition. That would have avoided any risk that Capital Associates could be deprived of effective appellate review, while avoiding all risk that this court would have to grapple with the same dispute more than once. But unless we treat the district court's actual disposition as "final," we lack authority even to remand for entry of such a stay. A corollary to the norm that dismissals without prejudice are non-final is recognition that when the district judge misdescribes as "without prejudice" a disposition that is conclusive in practical effect, the court of appeals possesses jurisdiction. See, e.g., *Dixon v. Page*, 291

F.3d 485 (7th Cir. 2002). Our situation calls the corollary into play. And because the parties have fully briefed the duty-to-defend question, and it turns out to be dispositive of all issues, we resolve it now rather than simply direct the district to put the case on ice. See *Crum & Forster Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398, 620 N.E. 2d 1073, 1081 (1993) (where there is no duty to defend, there is also no duty to indemnify).

"Privacy" is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. See *Restatement (Second) of Torts* §652 (1977); Richard S. Murphy, *Property Rights as Personal Information*, 84 Geo. L.J. 2381 (1996). A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted pregnancy, has both informational (secrecy) and locational (seclusion) components, with an overlay of substance (the objection to governmental regulation).

American States contends that its advertising-injury coverage deals with secrecy rather than seclusion. The language reads like coverage of the tort of "invasion of privacy," where an oral or written statement reveals an embarrassing fact, see *Briscoe v. Readers' Digest Association, Inc.*, 4 Cal. 3d 529 (1971), overruled on first amendment grounds by *Gates v. Discovery Communications, Inc.*, 2004 Cal. Lexis 11656 (S. Ct. Cal. Dec. 6, 2004), or as in *Time, Inc. v. Hill*, 385 U.S. 374 (1967), brings public attention to a private figure, or casts someone in a false light through publication of true but misleading facts. *See Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 417-18, 534 N.E. 2d 987, 989

(1989). See also *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1124 (7th Cir. 1994); *Hayes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) (Illinois law). Perhaps the language reasonably could be understood to cover improper disclosures of Social Security numbers, credit records, email addresses, and other details that could facilitate identity theft or spamming. See *Reno v. Condon*, 528 U.S. 141 (2000) (rejecting constitutional challenge to a federal statute limiting access to information in drivers' records). See also *Leopold v. Levin*, 45 Ill. 2d 434, 259 N.E. 2d 250 (1970) (recognizing identity misappropriation as a tort). Cf. *Kyllo v. United States*, 533 U.S. 27 (2001) (discussing privacy interest in thermal emissions from homes); Jeffrey Rosen, *The Unwanted Gaze* (2000).

JC Hauling does not allege that Capital Associates published any information about it, and the district judge did not directly address whether the policy is limited to publication of secret information. Indeed the judge did not remark the difference between secrecy and seclusion. Instead the judge stated that §227(b)(1)(C) has been understood to protect privacy—see *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997) (dictum) (quoting from legislative history)—and deemed that observation conclusive. *International Science & Technology Institute* used the word in the sense of seclusion: an unexpected fax, like a jangling telephone or a knock on the door, can disrupt a householder's peace and quiet, even though it is easy to throw a junk fax, like a piece of junk mail, in the trash without any risk that someone will observe activities that occur inside one's home. Section 227(b)(1)(C) doubtless promotes this (slight) interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipients' ink and paper. (It is these latter economic interests that furnish the basis of judicial decisions rejecting constitu-

tional challenges to restrictions on uninvited faxes. See *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54 (9th Cir. 1995); *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003).) But the question is not how the word "privacy" was used in the debates that led to §227(b)(1)(C), or in its implementing regulations, but what the word means in this insurance policy. To say, as the district court did, that §227(b)(1)(C) protects privacy, and then stop the analysis, is to avoid the central question in the case: whether the policy covers the sort of seclusion interest affected by faxed ads.

One reason to doubt that the policy covers the claim is the identity of the plaintiff. JC Hauling is a corporation, and businesses lack interests in seclusion. It is not just that they are "open for business" and thus welcome phone calls and other means to alert them to profitable opportunities. It is that corporations are not alive. Where does a corporation go when it just wants to be left alone? Most states hold that business entities lack privacy interests. See *Restatement (Second) of Torts* §652I Comment c. Cf. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). (Our point is not that business entities lack interests protected by §227(b)(1)(C), but that it does not help to call them "privacy" interests.) Corporate managers have interests in seclusion, but the state suit was filed by the corporation rather than by any natural person. A fax is less disturbing than a phone call, and a business-related call at work does not invade the managers' interest in seclusion.

The class of junk-fax recipients may include real rather than artificial people, however, so we cannot stop yet. The structure of the policy strongly implies that coverage is limited to secrecy interests. It covers a "publication" that violates a right of privacy. In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant. A late-night knock on the door or other interruption can impinge on seclusion

without any need for publication. Contacting one customer at a time may not be "publication" at all for purposes of advertising-injury coverage. See *Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699 (7th Cir. 1999) (Illinois and Wisconsin law). Perhaps automated faxes to hundreds of recipients could be deemed a form of publication, but this would be irrelevant to the seclusion interest. To put this differently, §227(b)(1)(C) condemns a particular means of communicating an advertisement, rather than the contents of that advertisement—while an advertising-injury coverage deals with informational content.

Readers doubtless will note that, although Illinois law supplies the rule of decision, we have not cited any Illinois case interpreting the scope of "privacy" coverage under an advertising-injury clause. That is because Illinois has not issued any pertinent decision at any level (trial or appellate). The closest is *Melvin v. Burling*, 141 Ill. App. 3d 786, 789, 490 N.E. 2d 1011 (3d Dist. 1986), which holds that an interest in seclusion is "privacy" only if the subject of the intrusion is itself private. This does not resolve our controversy (though it does offer a little support for American States). Nor, for that matter, has the highest court of any state grappled with the subject. Almost all litigation of this kind has proceeded in federal district court. Most of these decisions have come out the same way as our district judge, and for the same reason—and thus have failed to distinguish secrecy from seclusion, or to appreciate that the statute's drafters and the insurance may use the word "privacy" in different ways. See, e.g., *Park University Enterprises, Inc. v. American Casualty Co.*, 314 F. Supp. 2d 1094, 1102-11 (D. Kan. 2004); *Universal Underwriters Insurance Co. v. Lou Fusz Automobile Network, Inc.*, 300 F. Supp. 2d 888, 894-96 (E.D. Mo. 2004); *Prime TV, LLC v. Travelers Insurance Co.*, 223 F. Supp. 2d 744, 752-53 (M.D. N.C. 2002). We disapprove these and similar decisions. Ours is the first federal appellate decision on the subject, and for reasons already

given we hold that an advertising-injury clause of the kind in American States' policy does not cover the normal consequences of junk advertising faxes.

For completeness we add that the property-damage clause in the policy is no more useful to Capital Associates; junk faxes use up the recipients' ink and paper, but senders anticipate that consequence. Senders may be uncertain whether particular faxes violate §227(b)(1)(C) but all senders know exactly how faxes deplete recipients' consumables. That activates the policy's intentional-tort exception (which applies to the property-damage coverage though not the advertising-injury coverage): it forecloses coverage when the recipient's loss is "expected or intended from the standpoint of the insured." Because *every* junk fax invades the recipient's property interest in consumables, this normal outcome is not covered.

So clear is this that American States need not provide a defense to the suit, even though Illinois (whose law applies) requires insurers to defend when coverage is a close issue, whether or not the policy would provide indemnity. See, e.g., *Aetna Casualty & Surety Co. v. Prestige Casualty Co.*, 195 Ill. App. 3d 660, 553 N.E. 2d 39 (1st Dist. 1990). This issue is not close.

REVERSED

No. 04-1659                                                         9

A true Copy:

   Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*