NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2976
_____

ONEBEACON AMERICA INSURANCE COMPANY

v.

URBAN OUTFITTERS, INC.; ANTHROPOLOGIE, INC.

v.

HANOVER INSURANCE GROUP

Urban Outfitters, Inc.; Anthropologie, Inc.,
Appellants
_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-13-cv-05269)
District Judge: Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 6, 2015

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: September 15, 2015)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This appeal arises out of requests for defense coverage made by Urban Outfitters, Inc. and its subsidiary, Anthropologie, Inc. (collectively, "Urban Outfitters") to their insurers, OneBeacon America Insurance Company ("OneBeacon") and the Hanover Insurance Group ("Hanover")[1] for three putative class action lawsuits filed against Urban Outfitters related to its collection of customer ZIP code data. Both Urban Outfitters, Inc. and Anthropologie, Inc. are co-defendants in underlying actions *Hancock v. Urban Outfitters, Inc.*, No. 1:13-cv-00939 (D.D.C.) ("*Hancock*") and *Dremak v. Urban Outfitters Inc.*, No. 37-2011-00085814-CU-BT-CTL (Cal. Super. Ct., San Diego Cty.) ("*Dremak*"), and Urban Outfitters, Inc. is the sole defendant in the third underlying action, *Miller v. Urban Outfitters, Inc.*, No. 13-2955 (Mass. Super. Ct., Suffolk Cty.) ("*Miller*").

OneBeacon initiated this declaratory judgment action on September 10, 2013, seeking a declaration that it owed no duty to defend or indemnify Urban Outfitters in the underlying actions. App. Vol. II at 1. Urban Outfitters then joined Hanover as a third-party defendant on October 25, 2013, and sought declarations that both insurers owed Urban Outfitters duties of defense and indemnity in the actions. App. Vol. II at 54-57, 68-70. Hanover subsequently filed an answer and counterclaim seeking a declaratory

---

[1] OneBeacon issued Urban Outfitters combined general liability ("CGL") and umbrella policies for the periods July 7, 2008, to July 7, 2009, and July 7, 2009, to July 7, 2010. OneBeacon issued a similar "fronting" policy for July 7, 2010, to July 7, 2011, for which Hanover is the responsible insurer. Hanover issued Urban Outfitters CGL and umbrella policies for the periods July 7, 2011, to July 7, 2012, and July 7, 2012, to July 7, 2013.

judgment that it had no obligation to defend or indemnify Urban Outfitters. App. Vol. II at 84. All three parties then filed motions for summary judgment, with Urban Outfitters seeking a determination that both insurers had a duty to defend the underlying suits, and the insurers seeking determinations that they had no such duties. The District Court denied Urban Outfitters's motion and granted the insurers' motions, declaring that neither insurer had a duty to defend in any of the underlying actions. For the reasons that follow, we will affirm.[2]

**I.**

The *Hancock* plaintiffs initiated their lawsuit in June 2013 in the United States District Court for the District of Columbia. The complaint alleged that Urban Outfitters "request[s] and collect[s] the customer's ZIP code when a customer chooses to use a credit card to make a purchase," and that Urban Outfitters "can use the ZIP codes for [its] own pecuniary benefit, including by engaging in direct marketing campaigns . . . by matching the customers' names with their ZIP codes to identify the customers' home/business address via commercially available databases." App. Vol. II at 92. The plaintiffs assert two causes of action: (1) violation of District of Columbia Code §§ 47-3153 and 47-3154, which provide that "no person shall, as a condition of accepting a credit card as payment for a sale of goods or services, request or record the address or telephone number of a credit card holder on the credit card transaction form," App. Vol. II at 100; and (2) violation of District of Columbia Code § 28-3904, which makes it

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Alexander v. Nat'l Fire Ins. of Hartford*, 454 F.3d 214, 219 n.4 (3d Cir. 2006).

illegal to "misrepresent as to a material fact which has a tendency to mislead; fail to state a material fact if such failure tends to mislead; or use deceptive representations . . . in connection with the sale of goods." App. Vol. II at 102. The complaint alleges defendants violated this statute because "[b]y asking for a consumer's ZIP code when the consumer chooses to pay by credit card, the Defendants . . . misrepresent[] . . . that provision of a ZIP code is necessary to complete the transaction." *Id.*

Urban Outfitters argues that Hanover and OneBeacon are obligated to defend this action because the relevant policies require them to defend against any suit seeking damages caused by "personal and advertising injury." Each of the policies defines "personal and advertising injury" to include injury "arising out of" "[o]ral or written publication, in any manner, of material that violates a person's right of privacy," and Urban Outfitters contends that *Hancock* alleges injury arising out of "publication." *See, e.g.*, App. Vol. II at 338. The District Court rejected that argument, however, reasoning that publication requires dissemination to the public at large, and the *Hancock* complaint failed to allege such publication.

We agree. Although neither the policies nor the Pennsylvania Supreme Court have defined "publication," that does not render the term ambiguous. Rather, "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and we may inform our understanding of these terms by considering their dictionary definitions." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100,

4

106 (Pa. 1999).[3] The District Court cited three separate dictionary definitions of "publication," all of which support the conclusion that "publication" requires dissemination to the public. This conclusion is consistent with *Whole Enchilada, Inc. v. Travelers Property Casualty Co. of America*, 581 F. Supp. 2d 677, 697 (W.D. Pa. 2008), which also held that "publication" means provision of information to the public at large. The fact that the policies specify that "publication" may be made "in any manner" does not alter the analysis; as the Eleventh Circuit correctly noted, the phrase "in any manner" "merely expands the categories of publication (such as e-mail, handwritten letters, and, perhaps, 'blast-faxes') covered by the [p]olicy," but "cannot change the plain meaning of the underlying term 'publication.'" *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 444 F. App'x 370, 375 (11th Cir. 2011). Accordingly, we hold that the actions of Urban Outfitters as alleged in the *Hancock* complaint do not constitute "publication" within the policy's definition of "personal and advertising injury," and that neither OneBeacon nor Hanover has a duty to defend or indemnify for the *Hancock* action.

## II.

The second action, *Dremak v. Urban Outfitters, Inc.*, involves six consolidated putative class actions pending in the California Superior Court in San Diego County. The

---

[3] In a diversity case, "we apply the choice-of-law rules of the state in which the district court sat." *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 434 (3d Cir. 2006). This action was filed in the Eastern District of Pennsylvania and thus, we apply the Pennsylvania choice-of-law rules, which provide that an insurance policy is governed by the law of the state in which the policy was issued and delivered. *See Frog, Switch, & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). Because the policy was issued and delivered in Pennsylvania, App. Vol. II. at 193, 243, 310, 347, Pennsylvania law applies.

plaintiffs in that action allege that Urban Outfitters "request[s] that cardholders provide personal identification information, including their ZIP codes, during credit card transactions, and then record[s] that information in electronic database systems." App. Vol. II. at 120. The complaint further alleges that Urban Outfitters "use[s] the unlawfully collected personal identification information for business-related purposes," including "targeted marketing, and may also sell the personal information to other businesses." *Id.* at 120, 124. Initially, the *Dremak* plaintiffs asserted both statutory and common law claims, but they later stipulated to dismissal of the common law claims, leaving a single cause of action for violations of the Song-Beverly Credit Card Act of 1971. App. Vol. II at 126-27, 449. Under that California statute, businesses may not:

> Request, or require as a condition to accepting [a] credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

Cal. Civ. Code § 1747.08(a)(2).

The District Court concluded that although the *Dremak* plaintiffs alleged injuries within the scope of the "personal and advertising injury" policy discussed above, coverage was barred by an exclusion contained in both the OneBeacon and Hanover policies. Specifically, the OneBeacon "Recording And Distribution Of Material Or Information In Violation Of Law" exclusion precludes coverage for:

> 'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny federal, state or local statute, ordinance or regulation . . . that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

App. Vol. II at 221. Hanover's policies contain a nearly identical exclusion.[4]

Once again, we agree with the District Court. The *Dremak* complaint plainly alleges actions that purportedly violate a state statute prohibiting the collection and recording of information. Appellants argue that the District Court overlooked the Pennsylvania rule that factual allegations, rather than particular causes of action, control the duty to defend. Appellants' Br. 46-48; *see Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."). But the District Court did no such thing. Instead, the Court looked to the factual allegations of the complaint in determining that the complaint alleged "action[s] or omission[s]" that were alleged to violate the Song-Beverly Credit Card Act. The fact that those same "action[s] or omission[s]" were also alleged to give rise to common law claims (claims that were dismissed) is irrelevant to the analysis. *See, e.g.*, *James River Ins. Co. v. Med Waste Mgmt., LLC*, 46 F. Supp. 3d 1350, 1358 (S.D. Fla. 2014) (finding exclusion that barred claims "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the Telephone Consumer Protection Act ("TCPA") applied to common law claims "premised

---

[4] Specifically, Hanover's policies exclude coverage of "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance, or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information." App. Vol. II at 409.

7

on the same underlying conduct" as the TCPA claims). Accordingly, neither insurer has a duty to defend or indemnify in the *Dremak* action.

### III.

Finally, we turn to the *Miller* action. In that putative class action, originally filed in the Suffolk County, Massachusetts Superior Court and then removed to the United States District Court for the District of Massachusetts, plaintiffs allege that Urban Outfitters engages in a practice of "collecting ZIP codes at checkout at its Massachusetts stores from customers who make purchases with Credit Cards, recording that information as part of the Credit Card transaction, and then using that information for its own marketing and promotional purposes, including to send unsolicited marketing and promotional materials, or 'junk mail.'" App. Vol. II at 106-07. The *Miller* complaint alleges two counts: one for violation of a Massachusetts statute that prohibits businesses from "writ[ing], caus[ing] to be written or requir[ing] that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form," Mass. Gen. Laws ch. 93, § 105(a), and another for unjust enrichment.

The District Court correctly concluded that the *Miller* complaint does not allege injury arising out of publication of material that violates a person's "right to privacy," as is required under the policies. The Pennsylvania Superior Court has recognized that the privacy right that is protected under such a clause is the right to secrecy, rather than the right to seclusion. *Telecoms. Network Design v. Brethren Mut.*, 5 A.3d 331, 337 (Pa. Super. Ct. 2010); *see also Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.

8

Supp. 2d 488, 501-02 (E.D. Pa. 2006); *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 941 (7th Cir. 2004) ("A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion."). But the factual allegations of the *Miller* complaint evince a concern with seclusion, and not secrecy. The complaint asserts that plaintiffs "have suffered an injury as a result of Defendant's unlawful conduct by receiving unsolicited marketing and promotional materials, or 'junk mail,' from Defendant." App. Vol. I at 110. Although the complaint asserts that Urban Outfitters did collect plaintiffs' ZIP code information, that information was collected allegedly "to identify the customer's address and/or telephone number . . . to send unsolicited marketing and promotional materials." *Id.* at 109-10. Put simply, the complaint does not assert harms based on the plaintiffs' interests in keeping their ZIP codes secret. Accordingly, it does not allege publication of material that violates a person's "right to privacy" under the policies, and the insurers have no duty to defend or indemnify in the *Miller* action.

## IV.

For the foregoing reasons, we will affirm the District Court's order. We will tax costs against appellants under Federal Rule of Appellate Procedure 39(a)(2).