# IN THE SUPREME COURT OF CALIFORNIA

YAHOO INC.,
Plaintiff and Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,
Defendant and Respondent.

S253593

Ninth Circuit 17-16452

Northern District of California
No. 5:17-cv-00447-NC

---

November 17, 2022

Justice Jenkins authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Corrigan, Liu,
Kruger, Groban, and Guerrero concurred.

---

YAHOO INC. v. NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

S253593


Opinion of the Court by Jenkins, J.


The law of privacy recognizes, among other things, a right to secrecy and a right to seclusion. "[A] person claiming the privacy right of seclusion asserts the right to be free, in a particular location, from disturbance *by* others. A person claiming the privacy right of secrecy asserts the right to prevent disclosure of personal information *to* others. Invasion of the privacy right of seclusion involves the *means*, *manner*, *and method* of communication in a location (or at a time) which disturbs the recipient's seclusion. By contrast, invasion of the privacy right of secrecy involves the *content* of communication that occurs when someone's private, personal information is disclosed to a third person." (*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 147 Cal.App.4th 137, 148–149 (*ACS Systems*).)[1]

Privacy injuries that involve the right of seclusion are sometimes actionable under the federal Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (section 227)), provided the violation involves the use of telephonic equipment.

[1] Our case law also recognizes two other types of privacy violations. Stated in general terms, these are: (1) "publicity placing a person in a false light," and (2) "misappropriation of a person's name or likeness." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 24; see *Fellows v. National Enquirer, Inc.* (1986) 42 Cal.3d 234, 238.)

1

Specifically, the TCPA protects the seclusion interests of telephone users by placing restrictions on automated telephone calls ("robocalls") and unsolicited facsimile machine advertisements ("junk faxes"). (See § 227; *Duguid v. Facebook, Inc.* (9th Cir. 2019) 926 F.3d 1146, 1149.) Subject to certain exceptions, the TCPA prohibits making "any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." (§ 227(b)(1)(A)(iii).) The TCPA also prohibits, again subject to exceptions, using "any . . . device to send, to a telephone facsimile machine, an unsolicited advertisement." (*Id.*, § 227(b)(1)(C).) Significantly, the TCPA's prohibitions have been interpreted to apply to text messages ("robotexts"), not just to voice telephone calls. (*Duguid*, *supra*, 926 F.3d at p. 1149; *Satterfield v. Simon & Schuster, Inc.* (9th Cir. 2009) 569 F.3d 946, 954.)

Many commercial general liability (CGL) insurance policies provide coverage against liability for privacy violations, but it is not always clear what specific types of privacy violations are covered. The insurance policy at issue here, for example, provides liability coverage for injuries "arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." The question we must resolve is whether this language provides liability coverage for right-of-seclusion violations litigated under the TCPA. We conclude that it does, assuming such coverage is consistent with the insured's reasonable expectations.

## I. FACTS AND PROCEDURAL BACKGROUND

When defendant National Union Fire Insurance Company of Pittsburgh, PA (National Union) declined to defend or

indemnify plaintiff Yahoo Inc. (Yahoo!) in a series of putative class action lawsuits alleging that Yahoo!'s unsolicited text messaging had violated the TCPA, Yahoo! sued National Union in federal district court, alleging breach of contract and seeking to obtain coverage.  According to the complaint, National Union sold Yahoo! a CGL policy covering the period when the alleged TCPA violations occurred.[2]  The policy was in the form of National Union's standard CGL policy, modified by various endorsements including a negotiated endorsement called endorsement No. 1 (Endorsement No. 1).

The standard version of National Union's policy provided liability coverage for "personal and advertising injury," which the policy defined as injury arising out of any of seven specified offenses, including "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."  The standard policy, however, *excluded* injuries arising from the distribution of material in violation of the TCPA.

Endorsement No. 1 modified National Union's standard policy in three important ways.  First, Endorsement No. 1

---

[2] National Union actually sold Yahoo! four consecutive policies, covering the period from May 31, 2008, to May 31, 2012, each containing the same relevant terms.  For the sake of simplicity, we refer to these four policies collectively as if they were a single policy.  The complaint also alleges coverage under a fifth consecutive policy, but Yahoo! concedes that this was error because the fifth policy was materially different from the others.  Yahoo! states that it plans to amend its complaint to correct this error.

removed the exclusion for injuries arising from violations of the TCPA.[3]

Second, Endorsement No. 1 provided liability coverage only for "personal injury" (as compared to "personal and advertising injury" in the standard version of the policy), and it defined "personal injury" to include injury arising from any of five offenses (as compared to seven offenses in the standard version of the policy). The list of five offenses, however, still included injuries arising from "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."[4] Therefore, although Endorsement No. 1 removed

---

[3] A separate endorsement — the "Statute Endorsement" — added an exclusion for liability arising from "any act that violates *any statute* . . . of any *federal* [or] state . . . government, . . . that . . . *addresses or applies to the sending, transmitting or communicating of any material or information*, by any means whatsoever." (Italics added.) The existence of the Statute Endorsement caused the Ninth Circuit to consider whether the removal of the more specific exclusion for TCPA liability had been without substantive effect. The Ninth Circuit asked for supplemental briefing on the question, and Yahoo! argued that Endorsement No. 1 superseded the Statute Endorsement. We express no view on the question.

[4] The five personal injury offenses are: "a. False arrest, detention, or imprisonment; [¶] b. Malicious prosecution; [¶] c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; [¶] d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [¶] e. Oral or written publication, in any manner, of material that violates a person's right of privacy."

coverage for advertising injuries, coverage for injuries to privacy remained.

Third, and related to the second change, Endorsement No. 1 expressly *excluded* liability coverage for "advertising injury," which it defined as injury arising from any of four offenses, including "[o]ral or written publication, in any manner, of material *in your 'advertisement'* that violates a person's right of privacy."[5] (Italics added.) Therefore, although Endorsement No. 1's coverage provision created liability coverage for privacy injuries, the same endorsement expressly carved out liability coverage for privacy injuries caused by material in a Yahoo! advertisement.

Yahoo! argues that its policy — as modified by Endorsement No. 1 — gave rise, at the very least, to the potential for coverage of the TCPA claims alleged against it in the underlying putative class action lawsuits, and therefore National Union was obligated to defend Yahoo! in those suits, and it breached its contract by declining to do so. (See *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 276–277.) The federal district court rejected that argument. It granted National Union's motion to dismiss, concluding that the TCPA lawsuits do not fall within the policy's coverage provision because they do

---

[5] The four advertising injury offenses are: "a. Oral or written publication, in any manner, of material in your 'advertisement' that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; [¶] b. Oral or written publication, in any manner, of material in your 'advertisement' that violates a person's right of privacy; [¶] c. The use of another's advertising idea in your 'advertisement'; or [¶] d. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.' "

not allege an injury arising out of the "publication . . . of *material that violates a person's right of privacy*." (Italics added.) Focusing on the italicized language quoted above, the district court concluded that this language covers liability for right-of-secrecy violations but that it does not cover right-of-seclusion violations, including right-of-seclusion violations litigated under the TCPA. In reaching this conclusion, the district court applied the rule of the last antecedent, a rule of construction under which a restrictive clause modifies only the word or phrase that immediately precedes it. Applying that rule, the court read the clause "that violates a person's right of privacy" as modifying only the word "material," meaning that for the policy to provide liability coverage, the alleged privacy violation must relate to the *content* of the published material. Finding that the TCPA claims asserted against Yahoo! focused on the transmission of unsolicited text messages rather than the content of those messages, the federal district court dismissed Yahoo!'s insurance coverage action, entering judgment for National Union.

Yahoo! appealed, and the United States Court of Appeals for the Ninth Circuit certified a question of state law to this court. We granted the Ninth Circuit's request and rephrased its question (see Cal. Rules of Court, rule 8.548(f)(5)). As rephrased, we are called upon to answer the following question: "Does a commercial general liability insurance policy that provides coverage for 'personal injury,' defined as 'injury . . . arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy,' and that has been modified by endorsement with regard to advertising injuries, trigger the insurer's duty to defend the insured against

a claim that the insured violated the [TCPA] of 1991 (47 U.S.C.
§ 227) by sending unsolicited text message advertisements that
did not reveal any private information?"[6]

## II. DISCUSSION

The parties agree that the TCPA creates a statutory cause
of action to redress telephonic intrusions that can, depending on
the factual circumstances, violate the common law right of
seclusion, and the parties also agree that the TCPA is not
concerned with disclosures that violate the common law right of
secrecy. (See *Los Angeles Lakers, Inc. v. Federal Ins. Co.* (9th
Cir. 2017) 869 F.3d 795, 806 [" '[c]ourts have consistently held
the TCPA protects a species of privacy interest in the sense of
seclusion' "]; *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*
(7th Cir. 2009) 580 F.3d 543, 549 ["The underlying [TCPA] suit
here only involves seclusion interests"]; *Resource Bankshares
Corp. v. St. Paul Mercury Ins. Co.* (4th Cir. 2005) 407 F.3d 631,
642 ["the TCPA's unsolicited fax prohibition protects 'seclusion'
privacy, for which content is irrelevant"]; *American States Ins.
Co. v. Capital Associates of Jackson County* (7th Cir. 2004) 392
F.3d 939, 943 [the TCPA "condemns a particular means of
communicating an advertisement, rather than the contents of
that advertisement"].) Therefore, if the policy at issue here does
not cover liability for violations of the right of seclusion, then it

---

[6] The phrase "by sending unsolicited text message
advertisements" appears both in the Ninth Circuit's original
certified question and in our rephrasing of the question.
Nonetheless, our statement of the certified question should not
be interpreted to express this court's opinion as to whether the
text messages at issue in the underlying TCPA lawsuits were,
in fact, advertisements as defined in the policy.

does not cover Yahoo!'s potential TCPA liability in the
underlying lawsuits.

Whether Yahoo!'s policy covers liability for violations of
the right of seclusion, like all questions concerning the scope of
insurance coverage, is subject to de novo review. (*Waller v.
Truck Ins. Exchange* (1995) 11 Cal.4th 1, 18.) The relevant
principles are well settled. In *Palmer v. Truck Ins. Exchange*,
we said: " 'While insurance contracts have special features, they
are still contracts to which the ordinary rules of contractual
interpretation apply.' [Citation.] Thus, 'the mutual intention of
the parties at the time the contract is formed governs
interpretation.' [Citation.] If possible, we infer this intent solely
from the written provisions of the insurance policy. [Citation.]
If the policy language 'is clear and explicit, it governs.' " (*Palmer
v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 (*Palmer*).)
Similarly, in *Boghos v. Certain Underwriters at Lloyd's of
London*, we said: "Our goal in construing insurance contracts,
as with contracts generally, is to give effect to the parties'
mutual intentions. [Citations.] 'If contractual language is clear
and explicit, it governs.' [Citations.] If the terms are ambiguous
[i.e., susceptible of more than one reasonable interpretation], we
interpret them to protect ' "the objectively reasonable
expectations of the insured." ' [Citations.] Only if these rules do
not resolve a claimed ambiguity do we resort to the rule that
ambiguities are to be resolved against the insurer." (*Boghos v.*

*Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th
495, 501.)[7]

When coverage is in dispute, the initial burden is on the
insured — Yahoo! in this case — to prove that its claim falls
within the scope of potential coverage. (See *Waller v. Truck Ins.
Exchange*, *supra*, 11 Cal.4th at p. 16.) If the insured establishes
that the policy provides at least the potential for coverage, the
burden shifts to the insurer — National Union in this case — to
show the claim falls within one of the policy's exclusions. (See
*ibid.*; see also *Liberty Surplus Ins. Corp. v. Ledesma & Meyer
Construction Co., Inc.* (2018) 5 Cal.5th 216, 222 [" ' "[T]he
insured must prove the existence of a *potential for coverage*,
while the insurer must establish *the absence of any such
potential*. In other words, the insured need only show that the

---

[7] We have, in the past, formulated this inquiry slightly
differently. (See, e.g., *State of California v. Continental Ins. Co.*
(2012) 55 Cal.4th 186, 195 [" 'If an asserted ambiguity is not
eliminated by the language and context of the policy, courts then
invoke the principle that ambiguities are generally construed
against the party who caused the uncertainty to exist (i.e., the
insurer) in order to protect the insured's reasonable expectation
of coverage.' "], quoting *La Jolla Beach & Tennis Club, Inc. v.
Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37); *Producers
Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912
["It is a basic principle of insurance contract interpretation that
doubts, uncertainties and ambiguities arising out of policy
language ordinarily should be resolved in favor of the insured in
order to protect his *reasonable* expectation of coverage."].) To
the extent these prior formulations are inconsistent with our
description of the inquiry here, our formulation in this opinion
controls.

underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*" ' "].)[8]

### A. The Coverage Provision of Yahoo!'s Policy

The policy at issue here provides liability coverage for injuries "arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." We take the word "material" in this context to refer to "[i]nformation, ideas, data, documents, or other things that are used in reports, books, films, studies, etc." (Black's Law Dict. (10th ed. 2014) p. 1124, col. 2.) The clause "that violates a person's right of privacy" is a restrictive relative clause with the word "that" as its relative pronoun. According to the rules governing word order in the English language, a restrictive relative clause usually modifies the noun that immediately precedes it, which in this case is the word "material." In fact, if a restrictive relative clause is located in a place that is remote from the noun it modifies, it is usually described as a misplaced modifier. Hence, Strunk and White advise that a "relative pronoun should come, in most instances, immediately after its antecedent." (Strunk and White, The Elements of Style (4th ed. 2000) p. 29; see *id*. at pp. 28–31.) Sometimes, however, the antecedent of a relative pronoun consists of a *group of words*. In that case, "the relative [pronoun] comes at the end of the group, unless this would cause ambiguity." (*Id*. at p. 30.)

Here, it is unclear whether the restrictive clause "that violates a person's right of privacy" modifies a group of words or

---

[8] The Ninth Circuit has only asked us to address the scope of the coverage provision of Yahoo!'s policy; therefore, we do not consider the exclusions.

just a single word.  Specifically, it is ambiguous whether the clause modifies the entire phrase "[o]ral or written publication, in any manner, of material" or whether it modifies only the word "material."  If the former, then the intrusive way the material is published, not just its informational content, might give rise to the privacy violation at issue, and the violation would, nonetheless, be covered by the policy.  Under this reading, even if the published material were something that was not in the least private (for example, weather forecasts or sports scores), its publication in a manner that violated a person's right of seclusion would still amount to a covered privacy violation.  But if the clause "that violates a person's right of privacy" modifies only the word "material," then it follows that something about the material itself, viewed in isolation, must violate a person's right of privacy, which in turn implies that it must do so by reason of its informational content.  Thus, the coverage provision is facially ambiguous, and the ambiguity is critical to resolution of the question of coverage in this case.

In such situations, our first step is to consider whether the standard rules of contract interpretation can resolve the facial ambiguity in the policy's language.  Then, if the application of those rules fails to resolve the ambiguity, we interpret the provision in favor of protecting the insured's reasonable expectations.  "Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer." (*Boghos v. Certain Underwriters at Lloyd's of London, supra*, 36 Cal.4th at p. 501; see *Minkler v. Safeco Ins. Co.* (2010) 49 Cal.4th 315, 321–322; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264–1265.)

### 1. Application of the Standard Rules of Contract Interpretation

"The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." (*Palmer*, *supra*, 21 Cal.4th at p. 1118.) Rather, the meaning of the word or phrase must be considered in light of its context. (See *State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *Minkler v. Safeco Ins. Co.*, *supra*, 49 Cal.4th at p. 322; *Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1265.) Several aspects of the policy at issue here suggest that in the policy's coverage provision, the restrictive clause "that violates a person's right of privacy" modifies only the word "material," meaning that, for there to be coverage, the material itself — that is, its informational content — must give rise to the privacy violation.

Courts will favor an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant. (See *Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 420.) Reading the restrictive clause "that violates a person's right of privacy" as modifying the entire phrase "[o]ral or written publication, in any manner, of material," and thus as creating liability coverage for right-of-seclusion violations, might be seen as somewhat unnatural because it is a reading that arguably makes the word "material" superfluous. In other words, if the policy were intended to cover liability for any publication that violated a person's right of privacy, whether by disclosing a person's secrets or intruding upon a person's seclusion, or otherwise, then the word "material" could simply have been omitted from the coverage provision altogether. But the coverage provision at issue here

includes the word "material." The addition of the word "material" immediately before the restrictive clause "that violates a person's right of privacy" arguably suggests that something about the content of the material itself, viewed in isolation, must violate a person's right of privacy. Thus, since content is irrelevant to right-of-seclusion violations, the inclusion of the word "material" implies that the policy does not cover right-of-seclusion liability.

This reading of the coverage language finds support in various other provisions of Yahoo!'s policy. As modified by Endorsement No. 1, the policy provides liability coverage for "personal injury," which it defines to include injury arising from any of five offenses. One of those offenses is the one we have been discussing here ("[o]ral or written publication, in any manner, of material that violates a person's right of privacy"), but another offense, one not at issue here, uses parallel phrasing ("[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"). Although the latter offense is not implicated here directly, it is nonetheless relevant. Published material can slander, libel, or disparage a person only by reason of its informational content — it cannot do so in any other way. Therefore, the parallel phrasing between these two offenses supports an inference that both offenses are concerned with the informational content of the published material. (See *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475 ["the same word used in an instrument is generally given the same meaning unless the policy indicates otherwise"].) And that, in turn, suggests that

the liability coverage for privacy injuries does not extend to violations of the right of seclusion.

In addition, the policy at issue here excludes "[o]ral or written publication, in any manner, of material in your 'advertisement' that violates a person's right of privacy." With respect to this advertisement injury exclusion, the content of the advertisement is clearly referenced by the word "material" because the provision uses the phrase "material *in* your 'advertisement.'" (Italics added.) Again, because this advertisement provision, like the slander provision discussed above, uses phrasing that parallels the provision we are interpreting in this case, a plausible argument can be made that the latter provision is likewise concerned with the content of what is being published. (See *E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 475.)

Yet other aspects of Yahoo!'s policy suggest that in the policy's coverage provision, the restrictive clause "that violates a person's right of privacy" modifies the entire phrase "[o]ral or written publication, in any manner, of material," thus creating coverage for any publication-based right-of-privacy violation, including right-of-seclusion violations. For example, even if the slander provision and the advertising injury exclusion refer only to content-based injuries, those provisions are worded differently from the provision now before us. The specific provision at issue here ("[o]ral or written publication, in any manner, of material that violates a person's right of privacy") does not include language that similarly requires such a narrow interpretation.

Moreover, it may be that the parties affirmatively intended to modify the policy to cover right-of-seclusion injuries

litigated under the TCPA. In its brief in this court, Yahoo! says: "In the National Union Policies, the 'personal injury' coverage was deliberately expanded by manuscript endorsement [(i.e., Endorsement No. 1)] to cover specialized risks beyond what was covered by the standard form language. The endorsement removed certain exclusions, including the TCPA liability exclusion, and provided expanded coverage for *conduct-based* 'personal injury' offenses, separate and distinct from *content-based* 'advertising injury' offenses." (Italics added.) Relying on this conduct-content distinction, Yahoo! argues that, in the context of the coverage provision, the restrictive clause "that violates a person's right of privacy" should be interpreted broadly to include *conduct* that violates a person's right of privacy (i.e., right-of-seclusion violations), whereas in the context of the advertising injury exclusion, the same restrictive clause should be limited to *content* that violates a person's right of privacy (i.e., right-of-secrecy violations).

The arguments favoring Yahoo!'s broad reading of the coverage provision at issue are far from conclusive. However, Yahoo!'s arguments serve to persuade us that the policy remains ambiguous even when we apply the standard rules of contract interpretation in an effort to clarify the policy's meaning. The restrictive clause "that violates a person's right of privacy" can reasonably be read to modify the entire phrase "[o]ral or written publication, in any manner, of material," and the standard rules of contract interpretation do not foreclose that reading.[9]

---

[9] Insurance companies can easily avoid the ambiguous language used here, by revising the language to clarify the scope of the coverage they are providing.

### 2. *Insured's Reasonable Expectations and Other Considerations*

Where, as here, the standard rules of contract interpretation do not resolve an ambiguity in the operative language of an insurance policy, "we interpret [that language] to protect ' "the objectively reasonable expectations of the insured." ' " (*Boghos v. Certain Underwriters at Lloyd's of London*, *supra*, 36 Cal.4th at p. 501.) As noted above, "[o]nly if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer." (*Ibid*.; see *Minkler v. Safeco Ins. Co.*, *supra*, 49 Cal.4th at p. 321; *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1018.)

Therefore, "a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." (*Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1265.) Here, however, the question whether it was objectively reasonable for Yahoo! to expect coverage of its TCPA liability cannot be resolved without further litigation focusing on the scope of the Statute Endorsement, the scope of the advertising injury exclusion, the specific factual circumstances of the alleged TCPA violations (i.e., whether they amount to a right-of-seclusion violation under California law), and perhaps other unresolved issues not presented to this court. In this context, it also merits noting that merely removing an exclusion for TCPA liability is not, by itself, enough to establish *coverage* of such liability. (See *Waller v. Truck Ins. Exchange*, *supra*, 11 Cal.4th at p. 16.)

As regards the next and final step — the rule that we
interpret unresolvable ambiguities in favor of the insured — the
application of that rule must take into consideration the specific
circumstances in which the policy was drafted. The rule derives
from the principle of *contra proferentem* ("against the drafter"),
and it is justified on the grounds that the drafter of a contract
should bear the responsibility for ambiguities the drafter could
have resolved. (See Abraham, *A Theory of Insurance Policy
Interpretation* (1996) 95 Mich. L.Rev. 531, 533.) Therefore, the
rule favoring the insured does not necessarily apply where the
insured is one of the contract's drafters.

Here, sophisticated parties have bargained over the terms
of a manuscript endorsement, and the ambiguous coverage
provision appears in that manuscript endorsement. In this
situation, it is appropriate to ask whether the insurer can be
considered the sole drafter of the provision and therefore
whether the insurer is solely responsible for the ambiguity in
that provision. But even in the case of a manuscript
endorsement, ambiguities should be resolved in favor of
coverage when the specific ambiguous language is "adopted
verbatim from standard form policies used throughout the
country." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807,
823, fn. 9; see *id*. at pp. 823–824.) In the present case, despite
the characterization of Endorsement No. 1 as a manuscript
endorsement — which would normally imply that it contains
nonstandard, negotiated provisions — the disputed coverage
language under review is standard form language adopted
verbatim from insurer-drafted policies. Under such
circumstances, the insured — Yahoo! — cannot be charged with
creating the ambiguity that led to the dispute, and therefore it

is appropriate for courts to interpret any unresolvable ambiguities in Yahoo!'s favor. (See *Minkler v. Safeco Ins. Co.*, *supra*, 49 Cal.4th at p. 321; *State of California v. Allstate Ins. Co.*, *supra*, 45 Cal.4th at p. 1018.)

To summarize, we do not find Yahoo!'s broad reading of the coverage provision to be conclusive. Rather, we agree with Yahoo! that the coverage provision is ambiguous and that the standard rules of contract interpretation do not resolve the ambiguity. Because the provision is ambiguous, we conclude that it must be interpreted in a way that fulfills Yahoo!'s objectively reasonable expectations, which must be determined in further litigation. Finally, if the foregoing procedures do not resolve the ambiguity, then we resort to the rule that ambiguities are to be resolved against the drafter, and here the insurer is considered to be the drafter of the specific coverage language whose meaning is in dispute.

The federal district court, however, took a different approach, a point that we now address.

### B. The Rule of the Last Antecedent

As noted above, the district court relied on the rule of the last antecedent in arriving at its conclusion that the policy in question did not cover the claims asserted against Yahoo!. According to the last antecedent rule, "[r]elative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent." (Sutherland, Statutes and Statutory Construction (1891) § 267, p. 349; see Black's Law Dict., *supra*, pp. 1532–1533.) This rule of construction has been repeatedly recognized and applied by the United States Supreme Court (see, e.g., *Lockhart v. United States* (2016) 577 U.S. 347, 351; *Barnhart v. Thomas* (2003) 540

U.S. 20, 26–27; *FTC v. Mandel Brothers, Inc.* (1959) 359 U.S. 385, 389–390), and it was mentioned by the high court as early as 1799 (see *Sims Lessee v. Irvine* (1799) 3 U.S. 425, 444, fn. *).

In California, reliance on the last antecedent rule dates back at least a century. As formulated by this court, the rule provides that " ' "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding [them] and are not to be construed as extending to or including other[] [words or phrases] more remote." ' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743, quoting *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680; see *Los Angeles County v. Graves* (1930) 210 Cal. 21, 26–27.) The last antecedent rule is often applied where there is a list of terms, and the qualifying words or phrases follow the last item in the list. (See *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 530 ["The exemplar application of the last antecedent rule is a case where a modifying phrase appears after a list of multiple items or phrases"].) But more generally, the last antecedent rule can be understood to express the same rules of English word order discussed in part II.A., *ante*, meaning that a restrictive relative clause usually modifies the noun immediately preceding it. Employing the last antecedent rule in this manner, California courts have held that insurance policies using language similar to the language at issue here cover only right-of-secrecy liability, not right-of-seclusion liability.

In *ACS Systems*, *supra*, 147 Cal.App.4th 137, for example, the court applied the last antecedent rule to a group of insurance policies that covered liability for " '[m]aking known to any person or organization written or spoken material that violates

an individual's right of privacy.' " (*Id.* at p. 143.) The *ACS Systems* court read the clause " 'that violates an individual's right of privacy' " as modifying only the word " 'material,' " not as modifying the phrase " '[m]aking known.' " (*Id.* at p. 150.) Hence, the court concluded that for there to be liability coverage, the content of the material, not the manner of making it known, had to violate someone's privacy, meaning that the policy provided liability coverage only for disclosures that violated the right of secrecy. (*Id.* at pp. 150, 152.) A few years later, *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429 (*JT's Frames*) reached the same conclusion in a case in which the relevant insurance policies, like the policy at issue here, used the phrase " 'publication of,' " not the phrase " 'making known.' " (*Id.* at p. 447.)[10]

Not surprisingly, National Union relies on *ACS Systems* and *JT's Frames*, but Yahoo! directs our attention to decisions from other jurisdictions that have rejected the rule of the last antecedent in the present context. Yahoo! relies, for example,

---

[10] Courts in several other jurisdictions have also reached the same conclusion as the court in *ACS Systems*. (See *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, *supra*, 580 F.3d at pp. 550–551 [7th Cir. reaching same conclusion as *ACS Systems*, relying on the word "publication," which, the court said, suggests the disclosure of secrets]; *Subclass 2 of Master Class of Plaintiffs v. Melrose Hotel* (3d Cir. 2007) 503 F.3d 339, 340 [3d Cir. reaching same conclusion as *ACS Systems* by approving a district court analysis similar to that of *ACS Systems*]; *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, *supra*, 407 F.3d at p. 640 [4th Cir. reaching the same conclusion as *ACS Systems*]; *American States Ins. Co. v. Capital Associates of Jackson County*, *supra*, 392 F.3d at p. 943 [7th Cir. reaching the same conclusion as *ACS Systems*].)

on *Penzer v. Transp. Ins. Co.* (Fla. 2010) 29 So.3d 1000. In
*Penzer*, the Florida Supreme Court downplayed the significance
of the rule of the last antecedent, noting that it is "not an
absolute rule." (*Id.* at p. 1007.) Interpreting policy language
nearly identical to the language at issue here,[11] the *Penzer* court
concluded that the restrictive clause "that violates a person's
right of privacy" modifies *both* the word "publication" and the
word "material." The court therefore held that the policy at
issue in that case provided liability coverage when the manner
of publication, not just the content of the published material,
violated someone's privacy. (*Ibid.*)

In our view, the rule of the last antecedent, as articulated
in our case law, does not resolve the ambiguity in the policy
language at issue here. The rule of the last antecedent states
that " ' "qualifying words, phrases and clauses are to be applied
to the words *or phrases* immediately preceding [them] . . . ." ' "
(*Renee J. v. Superior Court, supra*, 26 Cal.4th at p. 743, italics
added.) As noted above, the rule is most readily applied where
there is a list of several items, and the modifier comes
immediately after the last item on the list. (See *People ex rel.
Lockyer v. R.J. Reynolds Tobacco Co., supra*, 107 Cal.App.4th at
p. 530; see also Sutherland, Statutes and Statutory
Construction, *supra*, § 267, pp. 349–351.) Here, however, there
is no list of items followed immediately by a modifier; instead,
there is the phrase "[o]ral or written publication, in any manner,
of material" followed immediately by a modifier. In applying the

---

[11] The policy language at issue in *Penzer* omitted the words
"in any manner" after the word "publication" but was otherwise
the same as the language at issue here.

rule of the last antecedent, if we identify the possible antecedents as either (1) the word "publication," or (2) the word "material," then the word "material" would be the last antecedent. But if, instead, we identify the possible antecedents as either (1) the *entire phrase* "[o]ral or written publication, in any manner, of material," or (2) merely the *final word* of that phrase, "material," then both potential antecedents would qualify as the last antecedent, as each would immediately precede the modifying restrictive clause. Accordingly, the rule does not resolve, in the present case, whether the relative clause "that violates a person's right of privacy" modifies just the *word* that immediately precedes it (i.e., the word "material") or whether the clause modifies the *entire phrase* that immediately precedes it (i.e., the phrase "[o]ral or written publication, in any manner, of material"). Therefore, we reach a different conclusion from the courts in *ACS Systems*, *supra*, 147 Cal.App.4th 137 and *JT's Frames*, *supra*, 181 Cal.App.4th 429, and find that the rule of the last antecedent does not resolve the ambiguity that characterizes coverage provisions like the one at issue here.[12]

## C. The Advertising Injury Exclusion

National Union asks us to apply the advertising injury exclusion of the policy to conclude that the policy does not cover

---

[12] The case before us does not involve the phrase "making known," a phrase that was at issue in *ACS Systems*, *supra*, 147 Cal.App.4th 137, and that some courts have interpreted more narrowly than the phrase "publication of." (See *Cynosure, Inc. v. St. Paul Fire and Marine Ins. Co.* (1st Cir. 2011) 645 F.3d 1.) Therefore, we express no view on whether *ACS Systems* was correctly decided.

Yahoo!'s potential TCPA liability in the underlying lawsuits. In the proceedings up to this point, however, National Union has not litigated the case based on the advertising injury exclusion, and the record before us does not indicate whether the text messages at issue here were advertisements as that term is defined in the policy. Accordingly, we express no view on the question.

## III. CONCLUSION

We answer the Ninth Circuit's question as follows: A CGL insurance policy that provides coverage for "personal injury," defined, in part, as "injury . . . arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy," can cover liability for violations of the right of seclusion if such coverage is consistent with the insured's objectively reasonable expectations. Such a policy can also trigger the insurer's duty to defend the insured against a claim that the insured violated the TCPA by sending unsolicited text messages that did not reveal any private or secret information, provided that the alleged TCPA violation amounts to a right-of-seclusion violation under California law. The fact that such a policy has been modified by an endorsement with regard to advertising injuries may affect such coverage and such duty to defend, but we have no occasion to decide that issue here.

**JENKINS, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**GUERRERO, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Yahoo Inc. v. National Union Fire Insurance Company of Pittsburgh, PA

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding** XX on request by 9th Circuit (Cal. Rules of Court, rule 8.548)
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S253593
**Date Filed:** November 17, 2022

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Jassy Vick Carolan and William T. Um for Plaintiff and Appellant.

Hunton Andrews Kurth, Lorelie S. Masters, Kevin V. Small, Alexandrea H. Young; Reed Smith, Timothy P. Law and Andrew B. Breidenbach for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Mitchell C. Tilner, Steven S. Fleischman, Emily V. Cuatto; Nicolaides Fink Thorpe Michaelides Sullivan, Richard H. Nicolaides, Jr., Daniel I. Graham, Jr., and Jodi S. Green for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William T. Um
Jassy Vick Carolan LLP
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
(310) 870-7048

Steven S. Fleischman
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505
(818) 995-5824